NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| CHRISTIN SACK, | : | |
| | : | |
| Plaintiff, | : | Civil No. 20-09693 (RBK/MJS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GERASIMOS TSOKANTAS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Dimitrios Kolovos' Motion to Dismiss (Doc. 13). For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

I.     **BACKGROUND**

This case arises from an employment dispute. Plaintiff is Christin Sack, a former server at Metro Diner. (Doc. 9, "Compl." ¶16.) Moving Defendant is Dimitrios Kolovos, the individual who "handled the payroll[] and drafted the tip credit notification" for all Metro Diner employees. (Compl. ¶19.) Kolovos was "involved in the management and operations of the Metro Diner and was responsible for employment policies" at issue in this litigation. (Compl. ¶19.) Sack's Complaint alleges that Metro Diner failed to pay Sack and other employees at Metro Diner adequate wages. Sack brings a collective class action under the Fair Labor Standards Act ("FLSA") for minimum wage violations (Compl. ¶¶92–100) and a class action under the New Jersey Wage and Hour Law for minimum wage violations ("NJWHL") (Compl. ¶¶101–09.)

1

The facts of this case are closely related to the facts of *Casco v. Ponzios*, 2018 WL 2002787, Case 1:16-cv-02084-RBK-JS ("the *Ponzios* Matter"), which is currently pending before this Court. In *Ponzios*, a former employees of Metro Diner brought a collective class action under the FLSA and a class action under the NJWHL for minimum wage violations. Complaint, *Casco v. Ponzios*, 2018 WL 2002787, Case 1:16-cv-02084-RBK-JS, ECF No. 1 ("*Ponzios* Compl."). Casco named Ponzios Rd. Inc. d/b/a Metro Diner as the sole defendant. In the *Ponzios* Matter, this Court conditionally certified a FLSA class encompassing "all former and current Tipped Employees who were employed at Metro Diner at any time between April 14, 2014 and the present who elect to participate" by opting in. The Court also certified a NJWHL class consisting of all current and former Tipped Employees who have worked at Metro Diner at any point from April 14, 2014 through the present who did not opt out.

In May 2017, the plaintiffs in *Ponzios* deposed Kolovos as Ponzios' corporate designee. Order on Motion to File an Amended Complaint, *Casco v. Ponzios*, 2018 WL 2002787, Case 1:16-cv-02084-RBK-JS, ECF No. 153 at 11 ("*Ponzios* Order"). After determining that Kolovos was the individual responsible for ensuring Ponzios' compliance with the FLSA and the NJWHL, the plaintiffs moved for leave to amend to add Kolovos as a defendant in his individual capacity. (*Ponzios* Order at 3). The Honorable Magistrate Judge Schneider found that the plaintiffs had unduly delayed filing the motion to amend, despite the "record demonstrat[ing] plaintiffs were aware of [Kolovos's] role in the claims alleged in this case years before their motion was filed." (*Ponzios* Order at 14). Therefore, Judge Schneider denied the plaintiffs' request to add Kolovos as an individual defendant. (*Ponzios* Order at 14).

Plaintiff in the present case, Sack, was an "absent class member" in the *Ponzios* Matter— she was not a named plaintiff, she did not opt-in to the FLSA Collective Class, and she did not

opt-out of the NJWHL class. On June 30, 2020—after Judge Schneider denied the motion to amend in the *Ponzios* Matter—Sack filed the present action. (Doc. 1.) Sack's proposed class includes the following: "'waiters/waitresses,' 'servers' and 'bussers' (collectively 'Tipped Employees'), who are and/or were subjected to Defendant's unlawful pay practices." (Compl. ¶4). Citing the *Ponzios* Matter, Kolovos moved to dismiss Sack's Complaint, arguing that (1) the NJWHL claim is barred by the New Jersey entire controversy doctrine, and (2) the FLSA claim is barred by collateral estoppel. (Doc. 13-2, "Mot. Dismiss" ¶¶11–12). Sack opposed the motion (Doc. 15, "Opp."), and Kolovos replied (Doc. 16, "Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); ***see also*** *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### B. Entire Controversy Doctrine

The entire controversy doctrine, codified in Rule 4:30A of the New Jersey Court Rules, "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court." *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989). The doctrine requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy or be forever barred from bringing a subsequent action involving the same underlying facts. *See Paramount Aviation Corp. v. Agusta,* 178 F.3d 132 (3d Cir. 1999) (requiring "adversaries to join all possible claims stemming from an event or series of events in one suit" under the New Jersey entire controversy doctrine). The doctrine applies in federal courts where there was a previous action involving the same underlying facts. *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997); *Fraize v. Gov't Nat'l Mortg. Ass'n*, No. 14-7152, 2016 WL 958392, at *6 (D.N.J. Mar. 14, 2016) ("all claims and parties that a party could have joined in a prior case based on the same transaction or occurrence" will be covered by the entire controversy rule).

The application of the entire controversy doctrine turns on three criteria: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991). "It is [a] commonality of facts, rather than the commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine." *DiTrolio v. Antiles*, 662

4

A.2d 494, 504 (N.J. 1995). Importantly, the doctrine "bars not only claims that were brought in the previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). The New Jersey entire controversy doctrine is intended to preclude a party from "withhold[ing] part of a controversy for separate litigation even when the withheld component is a separate and independently cognizable cause of action." *Maertin v. Armstrong World Indus. Inc.*, 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (quoting *Paramount Aviation*, 178 F.3d at 137).

### C.  Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating issues that were adjudicated in a prior lawsuit. *See In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Collateral estoppel exists to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to relitigate the same issues in multiple lawsuits. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.").

Under New Jersey law, a party seeking to invoke the doctrine of collateral estoppel must demonstrate that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *Wildoner v. Borough of Ramsey*, 720 A.2d 645, 654 (N.J. Super. Ct. App. Div. 1998) (citing *In re Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994)).

In deciding the identity of issues, the court "should consider whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007); *see also* Restatement (Second) of Judgments § 27 comment c (1982); *Montana v. United States*, 440 U.S. 147, 155 (1979) (the identity of issues requirement is fulfilled where the issues in the current case are "in substance the same" as those previously resolved); *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) ("Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules.").

## III.   DISCUSSION

Kolovos argues that (1) the NJWHL claim against him should be dismissed because it is barred by New Jersey's "entire controversy doctrine," and (2) the FLSA claim against him should be dismissed under the doctrine of collateral estoppel. (Mot. at 3.) The Court addresses each argument in turn.

### A.  Whether the NJWHL Claim is Barred by the Entire Controversy Doctrine

First, Kolovos asserts that the Court should dismiss the NJWHL claim under New Jersey's entire controversy doctrine. Kolovos argues that the claim is barred because it "is substantively identical to the NJWHL claim in the *Ponzios* Matter." (Mot. at 8.) Kolovos contends that Judge Schneider's denial of the motion to amend in that case is "tantamount to a valid, final judgment," Sack is a member of both classes, and therefore, "Sack cannot now assert identical claims stemming from the same conduct of Kolovos as those asserted in the *Ponzios* matter." (Mot. at 8.)

In response, Sack argues that she "is not, and never has been, a party in the *Ponzios* Litigation." (Opp. at 6.) Rather, Sack was an "absent class member," and therefore she should be permitted to bring her own class action. (Opp. at 6.)

It is undisputed that Sack did not opt-out of the NJWHL class. Therefore, Sack is—and remains—a class member in the *Ponzios* Matter. The primary determinative issue thus before the Court is whether Sack is a "party" to the *Ponzios* Matter in such a way which would preclude her from bringing a new suit based on virtually identical underlying facts and claims. Sack's argument rests primarily on the assertion that, as an absent class member, she could not be responsible for timely joining necessary parties, nor did she have the opportunity to add necessary parties. (Mot. at 7.) Therefore, applying the entire controversy doctrine under these facts and circumstances could potentially deprive Sack of her opportunity to be heard on her claims. (Mot. at 7.)

The Court recognizes the general proposition that "[a] party" to litigation is "[o]ne by or against whom a lawsuit is brought"' [citation], or one who 'become[s] a party by intervention, substitution, or third-party practice.'" *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011). Therefore, in the class context, absent class members are not technically parties. *See* William B. Rubenstein, Newberg on Class Actions §§ 18:6, 18:15 (5th ed. 2018). However, once a class is certified, absent class members are considered parties for preclusion purposes. *See Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008) ("Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries.") (internal citations omitted); *Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002) ("[N]onnamed class members . . . may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules

that may differ based on context."). Therefore, because Sack did not opt-out of the class, she was considered a party for preclusion purposes.

In an attempt to contradict the seemingly straightforward precedent, Sack cites to *Korrow v. Aaron's Inc.*, 300 F.R.D. 215 (D.N.J. 2014) and *In re Valeant Pharmacy International Securities Litigation*, No. 15-7658 (MAS) (LHG), 2020 U.S. Dist. LEXIS 78146 (D.N.J. May 4, 2020) for the proposition that class members are not "parties." However, neither of these cases are factually or procedurally analogous to the case at hand. *Korrow* dealt with whether absent class members could later pursue compulsory counterclaims when they were not given proper notice of the original action. 300 F.R.D. at 217. Such is not the case here. Likewise, *In re Valeant* dealt with distinct legal issues regarding disputed settlement of class claims. No. 15-7658 (MAS) (LHG), 2020 U.S. Dist. LEXIS 78146, at *3. Neither of these cases have any bearing on the outcoming here. Nor does Sack cite to any authority which would affirmatively support the proposition that "absent class members" may choose not to opt-out, wait for an unfavorable decision, and then pursue separate, but related claims arising out of the same set of facts.

The Court is mindful of Sack's due process concerns. However, the case law unequivocally supports that Sack was a party in the *Ponzios* Matter for purposes of the entire controversy doctrine. Although Sack did not have a requirement to join parties or "do anything" in the *Ponzios* Matter, she did have the opportunity to opt-out of that litigation if she was dissatisfied with the named plaintiff's selection of defendants in that case. Importantly, however, Sack did not opt-out. Accordingly, the Court finds that Sack is considered a party for preclusion purposes.

Having found that Sack is considered a party in the *Ponzios* Matter, the Court accordingly finds that the entire controversy doctrine bars her claims against Kolovos. The entire controversy doctrine requires all parties to assert all affirmative claims and defenses arising out of an

8

underlying controversy. *DiTriolio*, 662 A.2d at 494. As discussed above, the central consideration is whether the claims asserted in the present action arise from the same transaction that was the subject of previous litigation. *See id.* Sack's claims arise from the same set of facts regarding unpaid wages as the claims in the *Ponzios* Matter. Additionally, the Court finds that Kolovos could be prejudiced by allowing Sack to proceed due to the delayed nature of the proceedings. Therefore, because Sack did not timely assert the NJWHL claim against Kovolos in the *Ponzios* Matter, she is now barred from the asserting that claim here. The Motion to Dismiss the NJWHL claim is **GRANTED**.

### B.  Whether the FLSA Claim is Barred Due to Collateral Estoppel

Kolovos next argues that "[u]nder the doctrine of collateral estoppel, Sack should not be permitted to relitigate" whether Kolovos may be a party defendant. (Mot. at 13.) Kolovos argues that this issue has already been litigated and addressed by Judge Schneider's Order Denying the Motion to Amend in the *Ponzios* Matter. (Mot. at 13.) In response, Sack argues that the issue of whether Kolovos could be held liable for FLSA violations was never actually litigated in the *Ponzios* Matter. Rather, the only issue actually litigated was "whether Kolovos could be added as a defendant to that action given its stage of the litigation[.]" (Opp. at 15.) Thus, collateral estoppel does not apply.

The Court agrees with Sack and finds Kolovos' argument on this point specious. It is well-settled law that, for issue preclusion to apply, the specific issue sought to be precluded must have been actually litigated in the prior action. *Olivieri v. Y.M.F. Carpet, Inc.,* 897 A.2d 1003, 1009 (N.J. 2006). "An issue is 'actually litigated' when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *O'Leary v. Liberty Mutual Co.,*

923 F.2d 1062, 1066 (3d Cir. 1991) (citing Restatement (Second) of Judgments § 27 comment d, at 255) (1982)).

In the *Ponzios* Matter, Kolovos argued that the motion to amend to add him as a defendant should be denied because amendment would be futile. Importantly, however, Judge Schneider explicitly stated that the Court "[would] not address defendants' futility argument." (*Ponzios* Order at 12 n.4.) Instead Judge Schneider's Order denied the motion to amend on undue delay grounds. The Order specified that it "only addresse[d] the issue of whether [Kolovos] may be joined" as a party at the "late stage of the case." (*Ponzios* Order at 15 n.5.) Judge Schneider's Order did not address the merits of whether Kolovos could potentially be held liable for violations of the FLSA. Nor Did Judge Schneider's Order pass judgment on whether another individual could subsequently file suit against Kolovos. Rather, Judge Schneider's Order even acknowledged "there is frequently a possibility that if [a] motion [to amend] is denied the plaintiff will sue the [unjoined] parties in another lawsuit." (*Ponzios* Order at 14.) Accordingly, it does not seem that Judge Schneider intended for his decision in that case to preclude all future lawsuits against Kolovos. Because Judge Schneider did not make a determination on the issue of whether Kolovos could be held liable in his personal capacity for violations of the FLSA, the Court has not issued a final determination on the issue. Because the Court has not rendered a final determination, collateral estoppel does not preclude Sack's claims. Accordingly, the Motion to Dismiss the FLSA claim is **DENIED**.

## IV.    CONCLUSION

For the reasons contained herein, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent that it seeks to dismiss the NJWHL claim. The Motion is otherwise **DENIED**. An accompanying Order shall issue.

Dated: 7/26/2021                                          /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER

United States District Judge